## THE BRETANIER.

### (Circuit Court of Appeals, Fourth Circuit. August 4, 1920.)

#### No. 1827.

Salvage ☞30—**Award of $12,000 for salvage of stranded vessel held not insufficient.**

Where salvors sent a tug, which with its tackle was worth about $175,000, to aid a grounded vessel worth $500,000 and the salvors laid wrecking anchors, passing lines to the vessel, so that it was able by its own machinery to be floated, and after being towed a short distance proceeded under its own power, *held*, that an award of $12,000 was not, under the circumstances, inadequate.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Libel by the Merritt & Chapman Derrick & Wrecking Company against the ship Bretanier, claimed by Seward E. Drake, master. From a decree for salvage, claimed to be insufficient, libelant appeals. Affirmed.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

Edward R. Baird, Jr., of Norfolk, Va., and John M. Woolsey, of New York City (George M. Lanning, of New York City, on the brief), for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge. This is an appeal in admiralty from the award of the judge of the District Court of the United States for the Eastern District of Virginia in a salvage case. The decree awarded to the salvor, the appellant herein, the sum of $12,000, together with costs. This appeal is taken upon an assignment of error that the amount allowed is insufficient, and that the court should have decreed a larger amount.

It appears that the steamship Bretanier, bound on a voyage to Hampton Roads, got out of her course on November 4, 1919, and grounded on the coast near Little Island life-saving station. On the same day word was received by the appellant, the libelant below, that the steamship was ashore and needed assistance, and thereupon the libel-

ant's tug Rescue with her full crew, and well equipped with a wrecking salvage apparatus and crew, proceeded from Norfolk to the scene of the stranding, where she arrived about 9 p. m. on November 5. On the 6th a gale was prevailing, and the weather was so rough that it was impossible to communicate by boat with the steamship Bretanier. The Bretanier was then lying aground, and according to the evidence of the libelants, there was a bar or slight shoal, which lay between the Bretanier and the open ocean; the Bretanier lying inside of this shoal in a gully, closer to the beach.

The steamship had been endeavoring to extricate herself by working her engines, and seems to have slightly moved her position, but was unable to extricate herself. On the 7th of November communication was established between the tug Rescue and the steamship, and the official of the appellants, who was styled the wrecking master, who seems to have been a person of skill and competence, went aboard the steamship with some of his men, and after considering the situation, laid a 9,000-pound wrecking anchor off from the ship's stern, at a sufficient distance, which was made fast to a 6-inch steel cable, and connected with a 15-inch Manila cable, which was taken aboard the steamship. With this cable aboard, strain was put upon it by the engines and machinery of the steamship to heave her off, and this continued at high water on the 8th and 9th of November, and on the 9th another large wrecking anchor was taken aboard the surf-boat, and properly laid during the afternoon, and connected with the ship.

On November 10th the ship with her engines began heaving on both anchors in the morning, and put on an extra strain, and she was gradually hauled off of the shoal, and floated about 10 o'clock in the morning, when the Rescue took her in tow and towed her about 2 miles off shore and anchored in 7 fathoms of water. Thereafter the steamship lifted her anchor and proceeded under her own steam to Hampton Roads, where she arrived during the early evening of the 10th.

What the salvors accomplished was to send a fully equipped wrecking tug to the place of stranding, and there efficiently lay two heavy anchors at proper points, so as to afford the necessary fixed points of leverage, with the aid of which the vessel by the use of her own engines was enabled to extricate herself. The work of the salvors, as far as it went, was most commendable and efficient.

There does not appear to have been any peril involved to the lives of the salvors or to the salving property. Nor does there appear to have been any serious immediate danger either to the stranded vessel or her crew, except the danger which always attends a vessel which is stranded on the shore in the face of the open ocean. The value of the salved vessel is stipulated to have been $500,000, and the value of the Rescue and her apparatus is stipulated to have been $175,000.

Under all the circumstances, considering the time employed and the values involved, the court is of opinion that it should not disturb the award made by the District Judge, who heard all the witnesses, and whose award is not shown to have been clearly inadequate, but that the decree below should be affirmed.